IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| **DEBORA ROSE,** | ) |
| | )        2:15-2473 |
|     Plaintiff, | ) |
| | )   Civil Action No. 2:15-cv-11111 |
| v. | ) |
| | )   Electronically filed: |
| **KANAWHA COUNTY BOARD** | ) |
| **OF EDUCATION** | ) |
| | ) |
|     Defendant. | ) |

## COMPLAINT

Plaintiff, Debora Rose, ("Plaintiff") brings this action to enjoin the Kanawha County Board of Education ("Board" or "Defendant") from violating the provisions of Sections 7, 11 and 15 of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. §201, *et seq.*) (hereafter referred to as "the Act" or "FLSA"), and for a judgment against Defendant in the total amount of back wage compensation found by the court to be due to her as an employee of Defendant pursuant to the Act and for liquidated damages in an amount equal to the back wages found due to Plaintiff, together with her attorney fees and costs associated with the pursuit of this action. In addition, Plaintiff seeks damages arising from Defendant's violation of the West Virginia Wage Payment and Collection Act (*West Virginia Code* §21-5-1, *et seq.*) (hereafter referred to as the "WPCA").

1. Jurisdiction over this action is conferred on this court by Sections 16(c) and 17 of the Act, 29 U.S.C. §§216(c) and 217.

2. Defendant Kanawha County Board of Education is, and at all times referenced herein, has been an instrumentality of state government, duly elected by the citizens of

Kanawha County, West Virginia, and organized and authorized under West Virginia law. Defendant is located at 200 Elizabeth Street, Charleston, West Virginia, which is within the venue and jurisdiction of this court. Defendant is both an "Employer" and an "Enterprise engaged in commerce" as those terms are defined in the Act (29 U.S.C. §§203(d) and (s)(1)(B)). Defendant is also an "Employer" as that term is defined in the WPCA (*West Virginia Code* §21-5-1(m).

3. Plaintiff is a resident of Kanawha County, West Virginia, and at all times relevant to the allegations of this Complaint, has been an employee of Defendant. Plaintiff is not subject to any of the exemptions from the minimum wage and maximum hour provisions of the Act and has previously received overtime compensation on some occasions in an amount representing one and one-half times her regular rate of pay for all hours over forty worked in any one workweek.

4. Records of employee working time at Defendant's Elkview Bus Garage are created by the FLSA non-exempt employees "swiping" a personally-identifying card through an electronic time clock that then records the time of each such swipe. Under the current supervisor of that garage, Peggy Whitaker, non-exempt bus drivers are required to swipe in and out, not only at the beginning and ending of each bus trip, but also upon the beginning and ending of each individual task performed throughout the day that results in creditable working time. This requirement for employees to swipe in and out for individual tasks throughout the working day is inconsistent with §83.03.1 and 2 of Defendant's own policy G83A, entitled "Time and Attendance Tracking."

5. At all times during her employment by Defendant, Plaintiff has faithfully and accurately swiped her personally-identifying card at the appropriate times so as to

record only time for which she is suffered or permitted to work by Defendant. Specifically, and despite the language of Policy G83A, Plaintiff has also followed the directions of her immediate supervisor and has swiped in and out upon the beginning and ending of each individual task throughout the day.

6.  For a period of time prior to the institution of this action, Plaintiff kept and maintained her own, hand-written yet accurate records of the times at which she would swipe her personally-identifying card through the electronic time clock. Plaintiff began making her own independent records of swipes upon a suspicion that she was not being paid for all of the hours she was actually suffering or being permitted to work by Defendant. Plaintiff's practice of making her own records of her swipe times is well-known among the other non-exempt employees in Defendant's Elkview Bus Garage since this practice has occasionally and momentarily interfered with the other employees' access to that time clock as Plaintiff would write down her swipe times.

7.  There is a video camera focused on the electronic time clock, placed there for the apparent purpose of recording activity at the time clock. The video from that camera—assuming that it imprints a time stamp—would support Plaintiff's hand-written notations of the times she maintains she has swiped in and out upon beginning and ending work assignments. That camera, however, has been inoperable or disconnected for an unknown period of time. Defendant has undertaken no efforts to fix the camera at least throughout the tenure of the current Executive Director of Transportation for Defendant, Brette Fraley, despite being advised of Plaintiff's belief that she has been regularly deprived of pay for time she has been suffered or permitted to work by Defendant.

8.   Pursuant to §83.04 of Defendant's Time and Attendance Tracking Policy, the appropriate supervisor is to review and to approve each employee's time records on the morning of the day following the end of the payroll period. Upon information and belief, the electronic process for the review and approval of employee time records permits the supervisor to alter the records created by the electronic time clock. Under the terms of that policy, however, such alterations are intended to occur only rarely and must follow certain formalities.

9.   At no time during her entire tenure of employment by Defendant has Plaintiff ever been notified or asked by anyone in a supervisory capacity over her to acknowledge any change or alteration in any of her time records. To the contrary, any alterations or changes to any of her swipe times have occurred with no notice, explanation or justification being presented to her as the affected employee. In addition, Plaintiff's immediate supervisor admits Defendant has wholly failed to maintain the policy-required "written report" of alterations to employee swipe times at any time prior to Plaintiff's formal complaint to Defendant about these policy violations in November 2014.

10.   On or about October 22, 2014, Plaintiff requested from Whitaker a print-out of the Individual Employee Timesheet generated by her own time clock swipes with her supervisor's edits and approvals of the time recorded. When asked by Whitaker why she wanted the records, Plaintiff answered that she was seeking the print-out for purposes of testing whether Plaintiff's actual working time was being illegally reduced without her knowledge or consent. Whitaker ultimately provided the requested records for the time period from August 10, 2014-October 22, 2014, but did so with her own

hand-written notes on it challenging some of Plaintiff's time entries that had already been approved by Whitaker.

11. When compared with Plaintiff's accurate hand-written notes, the Individual Employee Timesheet that Plaintiff was provided by Whitaker reveals no fewer than 28 instances over the course of only 55 working days on which Plaintiff's time clock swipes were reduced or eliminated altogether. Each such alteration reflected on the print-out for the period she received resulted in a reduction of Plaintiff's actual working hours and, therefore, a reduction in the wages she was paid for that week. As of the filing of this action, Plaintiff does not know exactly how much of her actual working time has been erased by Defendant nor how much of that time should have resulted in overtime wages paid at one and one-half times her regular rate.

12. Almost immediately upon her October 22 request to Whitaker for a print-out of her Individual Employee Timesheet, Whitaker pursued a pattern of conduct in violation of Defendant's own policies and undertaken in retaliation for Plaintiff's notification to Whitaker of her belief that Defendant was not paying her in accordance with the dictates of the Act. Specifically, Plaintiff requested from Whitaker permission to take off three consecutive days of work using her accrued personal leave, the use of consecutive days of which is subject to supervisor approval under Defendant's Policy G05A, §5.05. Whitaker responded to this request with a hand-written sticky note approving a single day of the requested leave but denying the others, citing only a statutory provision that mirrors the language of Defendant's Policy G05A, §5.05.

13. Following receipt of the individual sticky note on which Whitaker denied Plaintiff's request for personal leave, Whitaker then posted a notice to all employees that there

would be no leave approved on the particular days sought by Plaintiff. Despite this posted notice and upon information and belief, Whitaker allowed another employee to take off work during those days using personal leave.

14. On the days for which her request for personal leave had been denied, Plaintiff nonetheless did not work but took sick leave in full compliance with Policy G05A's definition of when such leave is permissible. Plaintiff did not initially provide a medical or doctor's excuse for the claimed sick leave since Defendant's own policy imposes no such requirement for sick leave absences of fewer than three days. Plaintiff did obtain, however, medical documentation justifying her use of sick leave for those days and she has since provided that medical documentation to Defendant.

15. Citing an alleged violation of Defendant's Employee Attendance Policy in her request for sick leave, Defendant suspended Plaintiff from her employment with pay effective November 14, 2014. Upon information and belief, Whitaker's original denial of Plaintiff's request for personal leave; her reliance on specious reasoning for denying that leave request, and; her subsequent but apparently false claim that she was denying all leave during the particular days sought by Plaintiff, were all undertaken in furtherance of a pattern of harassment and retaliation for Plaintiff's complaint voiced only two weeks earlier that Whitaker was altering her time records in violation of the FLSA.

16. The paid suspension initiated on November 14 was converted to a two-day, unpaid disciplinary suspension served by Plaintiff on January 6 and 7, 2015. At the time she served her unpaid disciplinary suspension in January 2015, Plaintiff was owed wages for the periods of time improperly deleted from her time sheets by her supervisor.

Defendant failed and refused to pay Plaintiff wages she was owed and had not previously been paid on her next regular payday, thereby violating the WPCA.

17.     Whitaker's conduct in harassing and retaliating against Plaintiff and in altering Plaintiff's time records was done in willful and knowing disregard of her FLSA obligations as a supervisor for Defendant.  Whitaker's conduct in altering Plaintiff's time records, harassing and retaliating against Plaintiff for voicing complaints about that practice and the practice's effect of depriving Plaintiff of sums that should have been paid to her as wages violate 29 U.S.C. §§207, 211 and 215 and may also violate §206.

18.     Upon information and belief, Defendant either fails to maintain or fails adequately to monitor any system designed or intended to reduce the potential for supervisor fraud in the alteration of employee electronic time records.  Specifically and despite the language of Policy G83A requiring certain formalities to be observed before a supervisor may alter an employee's time record, Defendant either failed to maintain any system to ensure compliance with those formalities or failed to rely on any system that may exist to ensure compliance with those formalities.

19.     To the extent the time clock-focused camera could be considered a system intended to ensure compliance with its own policy and to prohibit supervisor fraud in the alteration of employee electronic time records, Defendant has willfully failed to maintain that system so as to reduce the potential for such fraud.  Defendant's failure to maintain any system, or failure to monitor any system that may exist for the purpose of preventing supervisor fraud in the alteration of employee time records, is a violation of 29 U.S.C. §211(c) and §215(a)(5).

20. Prior to October 2014, Plaintiff also voiced her concerns over Whitaker's alteration of her time records to another member of Defendant's management structure, Kim Thompson, who is responsible for the entire payroll system. Despite voicing her concerns to Thompson, no action was ever taken by Defendant's management team to investigate Plaintiff's allegations that Whitaker was altering her time records. As a result of Defendant's failure to act on the information Plaintiff provided to Thompson, Whitaker's practice of altering Plaintiff's time records continued long beyond when it should have been discovered and she suffered additional damages as a result of Defendant's failure to act. Defendant's failure to act when a high-ranking member of its management structure knew or should have known that a supervisor was committing fraud by altering employee time records without the formalities required by Policy G83A represents a willful and knowing failure by Defendant to comply with the Act. Thompson's failure to act on the information provided to her by Plaintiff is a violation of 29 U.S.C. §211(c) and §215(a)(5).

21. In November 2014, Plaintiff formally notified Defendant's Superintendent, Ron Duerring, of her belief that Whitaker had been improperly altering her time records in violation of the FLSA and Defendant's own policy. In response, Duerring promised in writing to address Plaintiff's complaints about FLSA violations and retaliation but has wholly failed and refused to do so at any time since making that promise. Fraley has specifically admitted to having learned of Plaintiff's FLSA-related complaints in November 2014 but has failed to undertake any investigation to determine the validity of those complaints and has further admitted that neither Duerring nor any other senior member of Defendant's management structure has ever asked him to conduct any such

investigation. Defendant's failure to act when high-ranking members of its management structure knew or should have known that a supervisor was committing fraud by altering employee time records without the formalities required by Policy G83A represents a willful and knowing failure by Defendant to comply with the Act. Duerring and Fraley's failures to act on the information provided to them by Plaintiff is a violation of 29 U.S.C. §211(c) and §215(a)(5).

22. Upon information and belief, Whitaker's regular practice of altering employee time records so as to deprive employees of compensation due under the Act extends to employees under her supervision other than Plaintiff. The Act specifically authorizes injunctive relief to restrain violations of §215 of the Act relating to the non-payment of minimum wages, overtime wages and failure to maintain accurate records. 29 U.S.C §217.

23. As a result of the violations of the Act referenced above relating to the non-payment of overtime, Plaintiff has suffered damages in an amount not yet determined. As a result of the violations of the Act referenced above relating to the failure to maintain accurate records, Plaintiff has suffered damages in an amount not yet determined. As a result of the violations of the Act referenced above relating to the harassment and retaliation leveled against Plaintiff since first voicing her complaints about Defendant's FLSA compliance, Plaintiff has also suffered damages in an amount not yet determined.

24. The confluence of Defendant's deletion of time for which Plaintiff was entitled to be paid under the FLSA and the imposition of her unpaid suspension resulted in an obligation under the WPCA to pay Plaintiff all wages to which she was entitled as of the

next regular payday following her unpaid suspension. Defendant failed and refused to do so and has, therefore, incurred liability to Plaintiff for actual and liquidated damages, together with attorney fees, under the WPCA, in an amount not yet determined.

**WHEREFORE**, having stated her complaint against Defendant for various violations of the Act and the WPCA, Plaintiff seeks relief and judgment from Defendant as follows:

1. An order entered pursuant to 29 U.S.C. §217 of the Act permanently enjoining and restraining Defendant and any of its employees, supervisors or managers and those persons in active concert or participation with Defendant who receive actual notice of any such order, from violating 29 U.S.C. §§206, 207, 211(c), 215(a)(2), (3) and (5) of the Act;

2. An order entered pursuant to 29 U.S.C. §216(b) finding Defendant liable to Plaintiff for all damages she has suffered as the result of the alteration of her time records and any resulting denial of wages she should have received together with compensation for damages she has suffered as a result of Defendant's violations of 29 U.S.C. §215(a)(3), liquidated damages in an amount equal to her actual damages and her attorney fees and costs associated with the pursuit of this action. Plaintiff seeks damages incurred over a period of three years predating the filing of this Complaint under 29 U.S.C. §255 for the willful violations of the Act;

3. An order entered pursuant to *West Virginia Code* §21-5-4 finding Defendant liable for all damages Plaintiff has suffered as the result of the denial of pay she was owed as of the next regular payday following her unpaid suspension

together with liquidated damages in an amount of three times the unpaid wages and attorney fees and costs associated with the pursuit of this action.

4. Such other relief as the court may deem proper.

                                                    DEBORA ROSE
                                                    By Counsel

_____
Mark A. Toor (WVSB #5228)
1210 Kanawha Blvd., East
Charleston, WV 25301
304-380-2111
mark@marktoor.com