**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

DEBORA ROSE,

Plaintiff,

v.                                                    CIVIL ACTION NO.   2:15-cv-02473

KANAWHA COUNTY BOARD OF
EDUCATION,

Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant's Amended Motion to Dismiss ("Defendant's Motion").[1] (ECF No. 13.) For the reasons provided herein, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion.

*I.   Background*

This case relates to an employment dispute between Plaintiff (the employee) and Defendant (the employer). Defendant is "organized . . . under West Virginia law." (ECF No. 1 ¶ 2.) "Plaintiff

---

[1] On May 11, 2015, Defendant filed its initial Motion to Dismiss. (ECF No. 5.) Defendant subsequently filed Defendant's Motion on August 3, 2015. (ECF No. 13.) In Defendant's Motion, Defendant asserts each of the arguments it presented in its first Motion to Dismiss, (*see* ECF Nos. 6 & 14), with the exception of an exhaustion argument that Defendant concedes "is no longer applicable in the present case" due to a successful mediation between the parties as to Plaintiff's underlying claims, (*see* ECF No. 14 at 9). (*See generally id.* at 1 (providing that Defendant filed Defendant's Motion due to the Court entering an order and notice "setting August 3, 2015 . . . as the deadline to file" motions under Federal Rule of Civil Procedure 12(b)).) As Defendant reasserts each of its live arguments in Defendant's Motion, the Court finds that Defendant's initial Motion to Dismiss is moot. The Court therefore **DENIES AS MOOT** Defendant's first Motion to Dismiss. (ECF No. 5.)

is a resident of Kanawha County, West Virginia, and at all times relevant to the allegations of [the] Complaint, has been an employee of Defendant." (*Id.* ¶ 3.)

The Complaint alleges that Plaintiff "is not subject to any of the exemptions from the minimum wage and maximum hour provisions of the" Fair Labor Standards Act (the "FLSA"). (*Id.*) The Complaint also alleges that Plaintiff "previously received overtime compensation on some occasions in an amount representing one and one-half times her regular rate of pay for all hours over forty worked in any one workweek." (*Id.*)

The Complaint avers that "[r]ecords of employee working time at Defendant's Elkview Bus Garage are created by the FLSA non-exempt employees 'swiping' a personally-identifying card through an electronic time clock that then records the time of each such swipe." (*Id.* ¶ 4.) The Complaint also alleges that, "[f]or a period of time prior to the institution of this action, Plaintiff kept and maintained her own, hand-written yet accurate records of the times at which she would swipe her personally-identifying card through the electronic time clock." (*Id.* ¶ 6.) The Complaint avers that Plaintiff began "making her own independent records of swipes upon a suspicion that she was not being paid for all of the hours she was actually . . . work[ing] . . . ." (*Id.*)

The Complaint alleges that "the current supervisor of" the "Elkview Bus Garage" is "Peggy Whitaker." (*Id.* ¶ 4.) The Complaint avers that, "[p]ursuant § 83.04 of Defendant's Time and Attendance Policy, the appropriate supervisor is to review and to approve each employee's time records . . . following the end of the payroll period." (*Id.* ¶ 8.) Plaintiff further avers—"[u]pon information and belief"—that "the electronic process for the review and approval of employee time records permits the supervisor to alter the records created by the electronic time clock." (*Id.*)

The Complaint alleges that, "[o]n or about October 22, 2014, Plaintiff requested from Whitaker a print-out of" Plaintiff's "[t]imesheet generated by her own time clock swipes with her supervisor's edits and approvals of the time recorded." (*Id.* ¶ 10.) The Complaint also avers that, "[w]hen asked by Whitaker why [Plaintiff] wanted the records, Plaintiff answered that she was seeking the print-out for purposes of testing whether Plaintiff's actual working time was being . . . reduced without her knowledge or consent." (*Id.*) The Complaint alleges that "Whitaker . . . provided the requested records for the time period from August 10, 2014-October 22, 2014, but did so with her own hand-written notes on it challenging some of Plaintiff's time entries that had already been approved by Whitaker." (*Id.*) The Complaint avers that Plaintiff then compared this time sheet with her "hand-written notes" and found "no fewer than 28 instances over the course of . . . 55 working days on which Plaintiff's time clock swipes were reduced or eliminated." (*Id.* ¶ 11.)

The Complaint next alleges that "[a]lmost immediately upon [Plaintiff's] October 22 request to Whitaker for a print-out of her . . . [t]imesheet, Whitaker pursued a pattern of conduct . . . in retaliation for Plaintiff's notification to Whitaker of [Plaintiff's] belief that Defendant was not paying [Plaintiff] in accordance with" the requirements of the FLSA. (*Id.* ¶ 12.) In particular, the Complaint avers that "Plaintiff requested from Whitaker permission to take off three consecutive days of work using [Plaintiff's] accrued personal leave" and Whitaker responded by "approving a single day of the requested leave but denying the others." (*Id.*) The Complaint further alleges that "Whitaker then posted a notice to all employees that there would be no leave approved on the particular days sought by Plaintiff," but nevertheless "allowed another employee to take off work during those days using personal leave." (*Id.* ¶ 13.) The Complaint alleges that, "upon

information and belief," Whitaker engaged in "a pattern of harassment and retaliation for Plaintiff's complaint voiced . . . two weeks earlier that Whitaker was altering [Plaintiff's] time records" by (1) "den[ying] . . . Plaintiff's request for personal leave;" (2) relying "on specious reasoning for denying [Plaintiff's] leave request;" and (3) "false[ly] claim[ing] that she was denying all leave during the particular days sought by Plaintiff." (*Id.* ¶ 15.)

The Complaint alleges that, despite the denial of her request, "Plaintiff . . . did not work" and "took sick leave" on "the days for which her request for personal leave had been denied." (*Id.* ¶ 14.) The Complaint then avers that, "[c]iting an alleged violation of Defendant's Employee Attendance Policy in her request for sick leave, Defendant suspended Plaintiff from her employment with pay effective November 14, 2014." (*Id.* ¶ 15.) The Complaint alleges that this "paid suspension . . . was converted to a two-day, unpaid disciplinary suspension," which Plaintiff "served . . . on January 6 and 7, 2015." (*Id.* ¶ 16.) Finally, the Complaint avers that "Defendant failed and refused to pay Plaintiff wages she was owed and had not previously been paid on her next regular payday." (*Id.*)

Plaintiff filed the Complaint in this Court on March 4, 2015. (ECF No. 1.) The Complaint asserts that Defendant's alleged conduct violated numerous sections of the FLSA, including provisions under 29 U.S.C. §§ 207, 211, 215, and 217, (*see id.* ¶¶ 17, 19–22; *see also id.* ¶ 17 (asserting that Defendant's alleged conduct "may also violate" 29 U.S.C. § 206)), as well as Defendant's obligations under the West Virginia Wage Payment and Collection Act (the "WPCA"), (*see id.* ¶ 24). The Complaint includes the following prayers for relief: (1) "[a]n order entered pursuant to 29 U.S.C. § 217 of the [FLSA] permanently enjoining and restraining Defendant . . . from violating 29 U.S.C. §§ 206, 207, 211(c), 215(a)(2), (3) and (5) of the [FLSA];"

(2) "[a]n order entered pursuant to 29 U.S.C. § 216(b) finding Defendant liable to Plaintiff for all damages she has suffered as the result of the alteration of her time records and any resulting denial of wages she should have received . . . as a result of Defendant's violations of 29 U.S.C. § 215(a)(3);" (3) "damages incurred over a period of three years predating the filing of [the] Complaint under 29 U.S.C. § 255 for" Defendant's alleged "willful violations of the [FLSA];" (4) "[a]n order entered pursuant to West Virginia Code § 21-5-4 finding Defendant liable for all damages Plaintiff has suffered as the result of the denial of pay she was owed as of the next regular payday following her unpaid suspension;" and (5) "liquidated damages in an amount equal to [Plaintiff's] actual damages and her attorney fees and costs associated with the pursuit of this action," as well as treble damages for Defendant's alleged violations of the WPCA. (*Id.* at 10–11.)

On May 11, 2015, Defendant filed its initial Motion to Dismiss. (ECF No. 5.) On June 22, 2015, Defendant filed a Motion to Enter Judgment on Defendant's Motion to Dismiss (the "Motion to Enter Judgment"). (ECF No. 9.) The next day, Plaintiff untimely filed her opposition to Defendant's initial Motion to Dismiss. (ECF No. 11.) Defendant then filed Defendant's Motion on August 3, 2015. (ECF No. 13.) To date, Plaintiff has not filed a responsive briefing to Defendant's Motion. As such, Defendant's Motion is ready for disposition.

## II. Subject Matter Jurisdiction

Defendant first challenges this Court's subject matter jurisdiction over Plaintiff's FLSA claims pursuant to Federal Rule of Civil Procedure 12(b)(1).[2] (*See* ECF No. 14 at 4–7.) In

---

[2] In Defendant's Motion to Enter Judgment, Defendant notes that Plaintiff "failed to file a response to Defendant's" initial Motion to Dismiss and requests "an entry of Judgment on" this first Motion to Dismiss. (ECF No. 9 at 1–2.) "Where a plaintiff fails to respond to a motion to dismiss within the time period set forth by the applicable procedural rules, a court may rule on the motion to dismiss 'on the uncontroverted bases asserted therein.'" *Hager v. Star Transp., Inc.*, Civil Action No. 2:11–cv–00618, 2012 WL 3139465, at *1 (S.D. W. Va. Aug. 1, 2012) (citing *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004)). Indeed, "[a] number of federal courts have declared that a motion to dismiss may be properly granted without reaching the merits, based on the theory that (i) plaintiff's failure to respond operates

particular, Defendant argues that the Court lacks subject matter jurisdiction to address the merits of Plaintiff's claims under both of the specific statutory provisions that Plaintiff cites in the Complaint for the purpose of invoking this Court's jurisdiction—29 U.S.C. §§ 216(c) and 217.[3] (*See id. See generally* ECF No. 1 ¶ 1 (providing Plaintiff's assertion in the Complaint that "[j]urisdiction over this action is conferred on this [C]ourt by Sections 16(c) and 17 of the [FLSA], 29 U.S.C. §§ 216(c) and 217").)

For the reasons provided below, the Court agrees with Defendant's arguments that Plaintiff lacks standing to raise claims under either Sections 216(c) or 217 of the FLSA. Nonetheless, the Court finds that it has federal question jurisdiction over Plaintiff's remaining Section 216(b) claims.

## A.     Standard for Rule 12(b)(1) Motions

"Under Rule 12(b)(1), a federal court must dismiss a claim if the court lacks [subject matter] jurisdiction over the claim." *Zimmeck v. Marshall Univ. Bd. of Governors*, Civil Action

---

as a concession that the motion should be granted, or (ii) dismissal is appropriate as a sanction for failure to prosecute or to obey the court's orders." *Anderson v. Greene*, No. Civ. 05-0393-WS-M, 2005 WL 1971116, at *2 (S.D. Ala. Aug. 16, 2005) (citing *Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1294–95 (D.C. Cir. 2004), *Pomerleau v. W. Springfield Pub. Sch.*, 362 F.3d 143, 145 (1st Cir. 2004), and *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991)). However, as this Court previously stated, "when a [p]laintiff fails to respond to a motion to dismiss, the Court does not deem such motion confessed, but rather [the Court] has an independent duty to examine the merits of that motion." *Acey v. Bob Evans Farms, Inc.*, Civil Action No. 2:13–cv–04916, 2014 WL 989201, at *2 (S.D. W. Va. Mar. 13, 2014). Pursuant to this independent duty, this Court has consistently addressed the merits of motions to dismiss, regardless of whether the plaintiff files opposition briefing. *See, e.g.*, *Tamburo v. Hall*, Civil Action No. 2:13–cv–01537, 2015 WL 1276711, at *3 n.2 (S.D. W. Va. Mar. 19, 2015); *Osborne v. Long*, Civil Action No. 1:11–cv–00070, 2012 WL 851106, at *10 n.5 (S.D. W. Va. Mar. 13, 2012). The Court therefore rejects Defendant's request—as provided in the Motion to Enter Judgment—to dismiss Plaintiff's claims on the grounds that Plaintiff failed to file a timely opposition to Defendant's initial Motion to Dismiss.

Accordingly, the Court **DENIES** Defendant's Motion to Enter Judgment. (ECF No. 9.)

[3] Plaintiff does not allege in the Complaint that this Court holds diversity jurisdiction over this controversy. (*See* ECF No. 1; *cf. id.* ¶¶ 2–3 (providing Plaintiff's averments in the Complaint that Defendant is "organized . . . under West Virginia law" and "Plaintiff is a resident of Kanawha County, West Virginia").) Rather, Plaintiff's allegations in the Complaint attempt to invoke this Court's federal question jurisdiction. (*See id.* ¶ 1); *cf. Newman v. Gen. Servs. Corp.*, Civil Action No. 3:11cv783, 2012 WL 1882903, at *2 (E.D. Va. May 22, 2012) ("If federal law creates the claim, the courts of the United States unquestionably have subject matter jurisdiction under 28 U.S.C. § 1331.").

No. 3:13–14743, 2013 WL 5700591, at *2 (S.D. W. Va. Oct. 18, 2013). *See generally Newman v. Gen. Servs. Corp.*, Civil Action No. 3:11cv783, 2012 WL 1882903, at *1 (E.D. Va. May 22, 2012) (noting that "[a] Rule 12(b)(1) motion most typically is employed when the movant believes that the claim asserted by the plaintiff does not involve a federal question, and there is no diversity of citizenship between the parties" (citation omitted)). "A motion to dismiss pursuant to Rule 12(b)(1) raises the fundamental question of whether a court is competent to hear and adjudicate the claims brought before it." *Adkins v. United States*, 923 F. Supp. 2d 853, 856 (S.D. W. Va. 2013). "It is axiomatic that a court must have subject matter jurisdiction over a controversy before it can render any decision on the merits." *Id.* "The burden of establishing subject matter jurisdiction rests with the plaintiff as 'the party asserting jurisdiction.'" *AGI Assocs., LLC v. City of Hickory, N.C.*, 773 F.3d 576, 578 (4th Cir. 2014) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).

"Challenges to jurisdiction under Rule 12(b)(1) may be raised in two distinct ways: 'facial attacks' and 'factual attacks.'" *Zimmeck*, 2013 WL 5700591, at *2 (quoting *Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir. 1986), *rejected on other grounds*, *Sheridan v. United States*, 487 U.S. 392 (1988)). Under a "facial attack," the defendant argues "that the allegations of the complaint are facially insufficient to sustain the court's jurisdiction." *Thigpen*, 800 F.2d at 401 n.15. "Confronted with a motion of that kind, the court must proceed as it would on a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Id.* "In that situation, the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009); *see, e.g.*, *Thigpen*, 800 F.2d at 401 n.15 (noting that, when considering a facial attack, "[t]he allegations in the complaint are taken as true, and materials outside the pleadings are not

considered" (citing *Adams*, 697 F.2d at 1219 and *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981))).

In a "factual attack," the defendant contends "that the plaintiff's jurisdictional allegations, though facially adequate, are factually untrue." *Thigpen*, 800 F.2d at 401 n.15. "In determining whether jurisdiction exists" in the context of a factual attack, "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citations omitted). "The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.* (citing *Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1559 (9th Cir. 1987)).

Defendant argues that Plaintiff's jurisdictional assertions in the Complaint are inadequate to invoke this Court's subject matter jurisdiction. (*See* ECF No. 14 at 4–7.) In particular, Defendant argues that Plaintiff does not have standing to bring claims under the statutory provisions she cites in the Complaint to invoke this Court's jurisdiction. (*See id.*) Defendant does not contend that any materials outside of the pleadings are necessary to determine this Court's subject matter jurisdiction over Plaintiff's claims. (*See* ECF No. 14.) The Court therefore construes Defendant's arguments regarding subject matter jurisdiction as facial attacks on this Court's jurisdiction and shall "proceed as [the Court] would on a motion to dismiss for failure to state a claim under Rule 12(b)(6)."[4] *Thigpen*, 800 F.2d at 401 n.15 (citation omitted); *cf. McGee v. Cole*, 66 F. Supp. 3d

---

[4] In the standard of review section of Defendant's Motion, Defendant provides, in part, the standard applicable to a factual attack on subject matter jurisdiction. (*See* ECF No. 14 at 3.) However, Defendant does not contend that

747, 751–52 (S.D. W. Va. 2014) (interpreting the defendants' Rule 12(b)(1) motion as a facial

attack where he asserted that the plaintiffs lacked standing to bring their claims).

## B.    29 U.S.C. § 217

The Court first addresses Plaintiff's assertion in the Complaint that the Court holds

jurisdiction over her request for injunctive relief pursuant to 29 U.S.C. § 217. (ECF No. 1 ¶ 1.)

Defendant argues that Plaintiff's request for injunctive relief must be dismissed because Plaintiff

lacks standing to seek an injunction under Section 217. (*See* ECF No. 14 at 6–7; *see also id.* at 9–

13 (providing Defendant's additional arguments that Plaintiff's request for injunctive relief should

be dismissed for failure to state a claim).) The Court agrees.

29 U.S.C. § 217 of the FLSA provides the following, in pertinent part:

> The district courts . . . shall have jurisdiction, for cause shown, to restrain violations
> of section 215 of [Title 29], including in the case of violations of section 215(a)(2)
> of [Title 29] the restraint of any withholding of payment of minimum wages or
> overtime compensation found by the court to be due to employees under this
> chapter . . . .

By its plain terms, "Section 217 of the FLSA gives district courts jurisdiction to enter injunctive

relief against an employers' violations of the [FLSA]." *Davis v. Skylink LTD.*, Civil Action No.

3:11–0094, 2011 WL 2447113, at *2 (S.D. W. Va. June 15, 2011) (citing 29 U.S.C. § 217).

In the Complaint, Plaintiff requests that the Court enter an order "pursuant to 29 U.S.C. §

217 of the [FLSA] permanently enjoining and restraining Defendant" from violating certain

---

Plaintiff's jurisdictional assertions in the Complaint are untrue, or that the Court should consider any evidence outside
of the pleadings to determine whether it holds subject matter jurisdiction over Plaintiff's claims. (*See id.* at 1–13.) The
Court therefore finds that Defendant's jurisdictional arguments are properly construed as facial attacks on this Court's
subject matter jurisdiction. *See, e.g., Zimmeck v. Marshall Univ. Bd. of Governors*, Civil Action No. 3:13–14743, 2013
WL 5700591, at *3 (S.D. W. Va. Oct. 18, 2013) (construing the defendants' "12(b)(1) attacks as . . . 'facial attacks'"
where the defendants did "not challenge the truthfulness of Plaintiff's . . . allegations"). *See generally U.S. ex rel. TBI
Invs., Inc. v. BrooAlexa, LLC*, 119 F. Supp. 3d 512, 523 (S.D. W. Va. 2015) (discussing the differences between facial
and factual attacks on a court's subject matter jurisdiction).

provisions of the FLSA. (ECF No. 1 at 10.) However, a related statutory provision under the FLSA—Section 211(a)—"sets forth the authority of the Secretary of Labor to conduct investigations and inspections for violations of the FLSA," *Howard v. City of Springfield, Ill.*, 274 F.3d 1141, 1145 (7th Cir. 2001), and states, in pertinent part, that "[e]xcept as provided in section 212 of [Title 29], the Administrator shall bring all actions under section 217 of this title to restrain violations of this chapter,"[5] 29 U.S.C. § 211(a). *See generally Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 409 n.1 (1984) ("Although § 11(a) [of the FLSA] grants investigatory authority specifically to the Wage and Hour Administrator, pursuant to [a reorganization plan], the functions of all officers of the Department of Labor, including the Wage and Hour Administrator, [were] transferred to the Secretary of Labor . . . ."). Pursuant to this statutory scheme, "[c]ourts have generally held that the right to seek injunctive relief under [the FLSA] rests exclusively with the Secretary [of Labor]." *Davis*, 2011 WL 2447113, at *2; *see, e.g.*, *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 903 (2014); *United Food & Commercial Workers Union, Local 1564 v. Albertson's, Inc.*, 207 F.3d 1193, 1197–98 (10th Cir. 2000); *Howard*, 274 F.3d at 1145; *Powell v. Florida*, 132 F.3d 677, 678 (11th Cir. 1998); *Barrentine v. Ark.-Best Freight Sys., Inc.*, 750 F.2d 47, 51 (8th Cir. 1984); *see also Lorillard v. Pons*, 434 U.S. 575, 581 (1978) ("[I]n construing the enforcement sections of the FLSA, the courts had consistently declared that injunctive relief was not available in suits by private individuals but only in suits by the Secretary." (citations omitted)); *Bailey v. TitleMax of Ga., Inc.*, 776 F.3d 797, 804 n.5 (11th Cir. 2015) ("In private FLSA actions, . . . courts are empowered to grant *only legal* relief." (citation omitted)).

---

[5] Section 212 of Title 29 pertains to child labor. *See* 29 U.S.C. § 212. Plaintiff raises no allegations related to child labor in the Complaint. (*See* ECF No. 1.) The Court therefore finds that the exception in Sections 211(a) pertaining to child labor is inapplicable in this action.

Plaintiff has failed to offer any argument as to why she is entitled to seek injunctive relief

under Section 217 despite this pervasive and persuasive authority indicating that the Secretary of

Labor retains the exclusive right to enjoin employers under the FLSA.[6] (*See* ECF No. 11 ¶ 3

(providing Plaintiff's statement that "it appears" that Defendant's arguments regarding "the issue

of the availability of injunctive relief . . . have some validity")).) The Court therefore finds that, in

the present case, it "would have jurisdiction to entertain a request for injunctive relief only from

---

[6] Plaintiff's desired injunctive relief includes a permanent injunction against Defendant from violating the retaliation provision under 29 U.S.C. § 215(a)(3). (*See* ECF No. 1 at 10.) In *Bailey v. Gulf Coast Transportation, Inc.*, the Eleventh Circuit recognized a limited exception to the general rule that private plaintiffs cannot seek injunctive relief under the FLSA. *See* 280 F.3d 1333, 1335–37 (11th Cir. 2002). The *Bailey* court held that, under the plain meaning of 29 U.S.C. § 216(b), a plaintiff may "obtain preliminary injunctive relief to address violations of the [FLSA's] antiretaliation provision" under Section 215(a)(3). *Id.* at 1337. *See generally Brown v. Club Assist Rd. Servs. U.S., Inc.*, Case No. 12 CV 5710, 2014 WL 1884461, at *11 (N.D. Ill. May 12, 2014) (noting that "[t]he Eleventh Circuit appears to be the only Court of Appeals that squarely has confronted [this] issue"). The Court has not located any case law from the Fourth Circuit or another court in this District specifically addressing this issue.

However, the Court need not reach the issue of whether the FLSA provides this limited exception to the general bar against private injunctive relief for several reasons. First, Plaintiff only requests injunctive relief pursuant to Section 217 of Title 29. (*See* ECF No. 1 at 10.) By contrast, the *Bailey* court found that the limited exception permitting private plaintiffs to obtain injunctive relief arose solely out of Section 216(b). *See* 280 F.3d at 1335–37.

Second, the circumstances of this case materially differ from those in *Bailey*. In particular, Plaintiff does not allege that her position was terminated, or that she is in immediate danger of suffering irreparable harm. (*See* ECF No. 1.) Plaintiff also seeks permanent injunctive relief, rather than a preliminary injunction. (*See id.* at 10.) In contrast, *Bailey* involved terminated employees who sought reinstatement through preliminary injunctive relief. *See* 280 F.3d at 1336 ("An injunction reinstating employees to their former position and restraining further retaliation fits squarely within the relief available under § 216(b) . . . ."); *see also Carrillo v. Schneider Logistics, Inc.*, No CV 11–8557 CAS (DTBx), 2012 WL 556309, at *9 (C.D. Cal. Jan. 31, 2012) (granting the plaintiffs' motion for preliminary injunction pursuant to Section 216(b) where an "entire . . . workforce" faced termination the following month); *Long v. Murray*, No. 6:09–cv–1320–Orl–19DAB, 2009 WL 4806941, at *1–4 (M.D. Fla. Dec. 4, 2009) (addressing the plaintiff's request for a preliminary injunction pursuant to the *Bailey* opinion where the plaintiff was terminated from his position). As such, *Bailey* is inapplicable to this case both as to the alleged harm and the injunctive relief Plaintiff requests in the Complaint.

Finally, Plaintiff has not made the requisite allegations to sustain her request for a permanent injunction. In particular, one requirement of a permanent injunction is that remedies available at law, such as monetary damages, are insufficient to compensate for the injury to the plaintiff. *See, e.g., eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (noting that one requirement to obtain permanent injunctive relief is that "remedies available at law, such as monetary damages, are inadequate to compensate" a plaintiff for their "irreparable injury"). Plaintiff has failed to make any allegation in the Complaint—or offer any argument in her briefing—that monetary remedies are inadequate compensation for her alleged injuries. (*See* ECF No. 1; *see also id.* at 23 (providing Plaintiff's averment in the Complaint that "Plaintiff suffered damages" as a result of Defendant's alleged violations of the FLSA).) Absent such allegation, Plaintiff is not entitled to permanent injunctive relief. *See, e.g., eBay Inc.*, 547 U.S. at 391.

For these reasons, the Court finds that—regardless of whether injunctive relief is available for retaliation claims under Section 216(b) of Title 29—Plaintiff's request for a permanent injunction preventing Defendant from violating 29 U.S.C. § 215(a)(3) must be dismissed.

the Secretary of Labor, not Plaintiff[].” *N.Y. State Court Clerks Ass'n v. Unified Court Sys. of N.Y.*, 25 F. Supp. 3d 459, 466 (S.D.N.Y. 2014). As Plaintiff cannot seek injunctive relief under Section 217, her request for such relief in the Complaint are properly dismissed.[7]

Accordingly, the Court **GRANTS** Defendant's Motion insofar as Defendant seeks dismissal of Plaintiff's request for injunctive relief pursuant to 29 U.S.C. § 217.[8]

## C.    29 U.S.C. § 216(b) and (c)

Defendant argues that the Court should dismiss Plaintiff's remaining FLSA claims for lack of subject matter jurisdiction because Plaintiff does not have standing to bring these claims under the other statutory provision Plaintiff cites for the purpose of invoking this Court's jurisdiction—29 U.S.C. § 216(c). (*See* ECF No. 14 at 4–6.) While the Court agrees that Plaintiff lacks standing to raise claims under Section 216(c), the Court nonetheless finds that it holds federal question jurisdiction over Plaintiff's remaining FLSA claims.

On the first page of the Complaint, Plaintiff asserts that “[j]urisdiction over this action is conferred on this [C]ourt by Section[] 16(c) . . . of the [FLSA], 29 U.S.C. § . . . 216(c).” (ECF No. 1 ¶ 1.) “Section 216(c) authorizes the Secretary to bring an action on behalf of an employee for unpaid overtime and minimum wages and to seek an equal amount as liquidated damages.” *Martin v. Deiriggi*, 985 F.2d 129, 134 (4th Cir. 1992) (citation omitted); *see* 29 U.S.C. § 216(c) (providing,

[7] In her opposition to Defendant's initial Motion to Dismiss, Plaintiff requests that the Court “hold a ruling in abeyance on the issue of the availability of injunctive relief” so that Plaintiff's counsel may have “the opportunity to conduct additional research before potentially conceding” this issue. (ECF No. 11 ¶ 3.) Plaintiff filed this opposition on June 23, 2015. (*See* ECF No. 11.) Over nine months have passed since Plaintiff made this request and she has not provided any additional arguments as to why her request for injunctive relief should not be dismissed. The Court therefore finds that Plaintiff had an overabundance of time to address this issue and that a stay on the ruling as to the issue of injunctive relief is not warranted.
[8] As the Court grants Defendant's Motion to the extent it requests dismissal of Plaintiff's Section 217 claims pursuant to Federal Rule of Civil Procedure 12(b)(1), it does not reach Defendant's alternative argument that the Court should dismiss these Section 217 claims pursuant to Rule 12(b)(6). (*See* ECF No. 14 at 9–13.)

in pertinent part, that "[t]he Secretary may bring an action in any court of competent jurisdiction to recover the amount of unpaid minimum wages or overtime compensation and an equal amount as liquidated damages"). As Defendant correctly notes, Section 216(c) is a grant of authority to the Secretary of Labor and does not give private plaintiffs a separate cause of action. *See, e.g.*, *Martin*, 985 F.2d at 134. Instead, to "afford[] individual employees access to the courts," Congress "armed" individuals "with a private cause of action" under Section 216(b). *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1224–25 (M.D. Fla. Aug. 4, 2009). *See generally Dellinger v. Sci. Applications Int'l Corp.*, 649 F.3d 226, 228 (4th Cir. 2011) ("The [FLSA] is enforced through criminal prosecutions, 29 U.S.C. § 216(a); private civil actions by employees, *id.* § 216(b); and civil enforcement actions by the Secretary of Labor, *id.* §§ 216(c), 217."). As such, Plaintiff's private cause of action for her remaining FLSA claims lies in Section 216(b), *see, e.g.*, *Dellinger*, 649 F.3d at 228, and *not* Section 216(c), which Plaintiff errantly identified in the Complaint as the statutory basis for this Court's jurisdiction, (*see* ECF No. 1 ¶ 1).

In her opposition briefing, Plaintiff concedes that her reference to Section 216(c) in the Complaint was a "typographical error" and that this Section provides "a cause of action available only to the U.S. Secretary of Labor." (ECF No. 11 ¶ 1.) However, Plaintiff argues that this Court has subject matter jurisdiction over her remaining FLSA claims because Plaintiff cites the correct statutory provision—Section 216(b)—in her prayer for relief. (*See id.*) Defendant, for its part, does not contest that Plaintiff later cited Section 216(b), or that Section 216(b) is the correct statutory basis for Plaintiff's remaining FLSA claims. (*See* ECF No. 14 at 4–7.) Instead, Defendant argues that Plaintiff's sole incorrect reference to Section 216(c) on the first page of the Complaint precludes this Court's jurisdiction over Plaintiff's remaining FLSA claims. (*See id.* at 4.)

13

Defendant cites no authority in support of its argument that this isolated errant reference to Section 216(c) precludes this Court's subject matter jurisdiction over Plaintiff's remaining FLSA claims. (*See* ECF No. 14.)

The Court is not persuaded by Defendant's argument. Defendant asks that this Court find that it lacks subject matter jurisdiction over Plaintiff's remaining FLSA claims based on an isolated reference to Section 216(c) in the Complaint, (*see id.* at 4), even though Plaintiff later identified the correct statutory provision in her prayer for relief, (*see* ECF No. 1 at 10). In essence, Defendant asks this Court to ignore the clear foundation for this Court's federal question jurisdiction over Plaintiff's Section 216(b) claims provided in the substance of the Complaint based on what appears to be a one-letter typographical error on the first page of the Complaint. The Court rejects Defendant's request. *See, e.g.*, *Vernell v. Nuvell Credit Co.*, Case No. 2:15-cv-674-FtM-38MRM, 2016 WL 931104, at *2 (M.D. Fla. Mar. 11, 2016) (noting that a counterclaim contained "a typographical error" in that the party "cit[ed] the wrong jurisdictional statute," but finding that "this typographical error does not warrant dismissal" where the correct statute was "clear"); *U.S. ex rel. Bahrani v. ConAgra, Inc.*, 183 F. Supp. 2d 1272, 1279–80 (D. Colo. 2002) (finding "no basis for dismissal" where the plaintiff "did not cite to the specific or proper subsections of the [statute] in pleading subject matter jurisdiction" and these were "technical or typographical errors at most that in no way misled [the defendants]"); *cf. Citigroup, Inc. v. Wachovia Corp.*, 613 F. Supp. 2d 485, 493 (S.D.N.Y. 2009) ("This Court will not base subject matter jurisdiction on a typographical error."). *See generally Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (noting "the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities" (citation omitted)). The Court therefore finds that it has federal question jurisdiction

14

over Plaintiff's Section 216(b) claims. *See, e.g.*, 29 U.S.C. § 216(b) ("An action to recover the liability prescribed in [Section 216(b)] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."); *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 695 (2003) ("[T]he district courts . . . have original jurisdiction over [Section 216(b)] FLSA claims under 28 U.S.C. § 1331, as 'arising under the Constitution, laws, or treaties of the United States,' and § 1337(a), as 'arising under any Act of Congress regulating commerce.'").

Accordingly, the Court **DENIES** Defendant's Motion to the extent Defendant seeks dismissal of Plaintiff's remaining FLSA claims.

### III. Supplemental Jurisdiction

Defendant next argues that—as the Court purportedly lacks subject matter jurisdiction over Plaintiff's FLSA claims—the Court should decline to exercise its supplemental jurisdiction over Plaintiff's state-law claim under West Virginia Code § 21-5-4.[9] (*See* ECF No. 14 at 7.) The Court disagrees.

The Supreme Court "has long adhered to principles of pendent and ancillary jurisdiction by which the federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that 'derive from a common nucleus of operative fact.'" *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164–65 (1997) (quoting *Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)); *see also Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995) (noting that the

---

[9] Defendant entitled its argument regarding the Court's jurisdiction over Plaintiff's state-law claim as the following: "This Court does not have subject matter jurisdiction over Plaintiff's State Law Claim." (ECF No. 14 at 7.) While this title references "subject matter jurisdiction," the substance of Defendant's argument indicates that Defendant requests that this Court refrain from exercising *supplemental jurisdiction* over Plaintiff's state-law claim. (*See id.* (citing multiple provisions of the supplemental jurisdiction statute—28 U.S.C. § 1367—using the term "supplemental jurisdiction" three separate times).) The Court therefore construes Defendant's argument relating to Plaintiff's state-law claim as requesting that the Court decline to exercise supplemental jurisdiction over this claim.

supplemental jurisdiction statute "is not limited to cases where the original basis for federal jurisdiction was a federal question," as "[i]t clearly provides for the operation of supplemental jurisdiction in diversity cases"). "Congress has codified those principles in the supplemental jurisdiction statute, which combines the doctrines of pendent and ancillary jurisdiction under a common heading." *City of Chi.*, 522 U.S. at 165 (citing 28 U.S.C. § 1367). This statute provides the following, in pertinent part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). "Supplemental jurisdiction thus allows parties to append state law claims over which federal courts would otherwise lack jurisdiction, so long as they form part of the same case or controversy as the federal claims." *Shanaghan*, 58 F.3d at 109 (citation omitted). Federal and state claims "form part of the same case or controversy" if they "derive from a common nucleus of operative fact." *Gibbs*, 383 U.S. at 725. "But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then . . . there is power in federal courts to hear the whole." *Id.*

Additionally, "[t]he Court may decline to exercise supplemental jurisdiction over a claim for reasons listed in 28 U.S.C. § 1367(c)." *Penn v. Citizens Telecom Servs. Co.*, 999 F. Supp. 2d 888, 901 (S.D. W. Va. 2014) (citation omitted). Section 1367(c) provides that the district court "may decline to exercise supplemental jurisdiction" if: (1) "the claim raises a novel or complex issue of State law;" (2) "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;" (3) "the district court has dismissed all claims over

which it has original jurisdiction;" or (4) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." In addition to these statutory considerations, other "factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan*, 58 F.3d at 110 (citations omitted).

In the present matter, Plaintiff has surviving federal-law claims pursuant to 29 U.S.C. § 216(b). (*See* ECF No. 1 at 10–11.) The Complaint's allegations indicate that the facts underlying Plaintiff's remaining federal-law claims and her state-law claim share a common nucleus of operative fact, as these claims all relate to Plaintiff's employment disagreements with Defendant and the steps Plaintiff took to address these issues. (*See, e.g.*, *id.* ¶ 24 (providing Plaintiff's allegation in the Complaint that "[t]he confluence of Defendant's deletion of time for which Plaintiff was entitled to be paid under the FLSA and the imposition of her unpaid suspension resulted in an obligation under the WPCA to pay Plaintiff all wages to which she was entitled as of the next regular payday following her unpaid suspension").) Additionally, the Court finds that it is appropriate to exercise supplemental jurisdiction over this state-law claim because (1) the Court has retained original jurisdiction over Plaintiff's remaining FLSA claims; (2) convenience and fairness to the parties favors retaining jurisdiction; and (3) the interests of judicial economy weigh in favor of the Court addressing Plaintiff's federal and state-law claims in the same litigation. *See, e.g.*, *Shanaghan*, 58 F.3d at 110 (discussing "factors that inform" the Court's "discretionary determination" of whether to exercise supplemental jurisdiction over state-law claims). The Court shall therefore exercise its discretion to retain supplemental jurisdiction over Plaintiff's state-law WPCA claim.

Accordingly, the Court **DENIES** Defendant's Motion insofar as Defendant argues that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claim under West Virginia Code § 21-5-4.

## IV.   *Failure to State a Claim*

Defendant next moves to dismiss Plaintiff's state-law claim under West Virginia Code § 21-5-4 pursuant to Federal Rule of Civil Procedure 12(b)(6).[10] (*See* ECF No. 14 at 9.) The Court again disagrees with Defendant's position.

## A.    **Federal Rule of Civil Procedure 12(b)(6)**

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Allegations "must be simple, concise, and direct" and "[n]o technical form is required." Fed. R. Civ. P. 8(d)(1). A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a civil complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "[I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court decides

---

[10] Defendant included its brief argument regarding Plaintiff's state-law claim in the same section as its discussion of supplemental jurisdiction. (*See* ECF No. 14 at 9.) However, the substance of Defendant's argument indicates that Defendant is asserting that Plaintiff's state-law claim fails to state a claim upon which relief can be granted. (*See id.*) The Court therefore construes Defendant's arguments regarding Plaintiff's state-law claim as a request for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).

18

whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that "the defendant is liable for the misconduct alleged." *Id.* A motion to dismiss will be granted if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

**B.    Discussion**

In the Complaint, Plaintiff alleges that Defendant was "obligated under the WPCA to pay Plaintiff all wages to which she was entitled as of the next regular payday following her unpaid suspension." (ECF No. 1 ¶ 24.) The Complaint then includes a prayer for relief for an "order pursuant to West Virginia Code § 21-5-4 finding Defendant liable for all damages Plaintiff has suffered," as well as "liquidated damages." (*Id.* at 10–11.) Defendant argues that Section 21-5-4 is inapplicable based on the allegations in the Complaint. (ECF No. 14 at 9.) The Court is not persuaded by Defendant's argument.

West Virginia Code "§ 21-5-4(b), (c) and (d) provide specific time periods in which an employer must 'pay an employee's wages' in full after the employee's discharge, resignation, suspension, or lay off." *Conrad v. Charles Town Races, Inc.*, 521 S.E.2d 537, 540 (W. Va. 1998). As pertinent here, West Virginia Code § 21-5-4(d) provides the following regarding the required payment of wages in the event an employee is suspended:

> When work of any employee is suspended as a result of a labor dispute, . . . the person, firm or corporation shall pay in full to the employee not later than the next regular payday, either through the regular pay channels or by mail if requested by

the employee, wages earned at the time of suspension . . . .

"In the context of [Section 21-5-4(d)], the word suspended is used only to denote an interruption in work due to a labor dispute." *Lehman v. United Bank, Inc.*, 719 S.E.2d 370, 374 (W. Va. 2011). "If [an employer] fails to adhere to the[] requirements" of Section 21-5-4, "the [employer] 'shall, in addition to the amount which was unpaid when due, be liable to the employee for three times that unpaid amount as liquidated damages.'" *Walker v. W. Publ'g Corp.*, Civil Action No. 5:09–cv–00723, 2011 WL 3607960, at *10 (S.D. W. Va. Aug. 12, 2011) (quoting W. Va. Code § 21-5-4(e)).

The Supreme Court of Appeals of West Virginia "has recognized the WPCA as 'remedial legislation designed to protect working people and assist them in the collection of compensation wrongly withheld.'" *Lehman*, 719 S.E.2d at 372–73 (quoting *Mullins v. Venable*, 297 S.E.2d 866, 869 (W. Va. 1982)). As such, courts "must construe the [WPCA] liberally so as to furnish and accomplish all the purposes intended." *Meadows v. Wal-Mart Stores, Inc.*, 530 S.E.2d 676, 688 (W. Va. 1999) (citation omitted).

Defendant argues that Section 21-5-4(d) is inapplicable in this case because Plaintiff was not suspended "as a result of a labor dispute." (ECF No. 14 at 9.) Defendant does not cite any authority supporting this position, (*see id.*), and Plaintiff did not address this argument in her opposition briefing, (*see* ECF No. 11.)

The terms "labor," "dispute," and "labor dispute" are not defined in either the WPCA, *see* W. Va. Code § 21-5-1 (providing applicable definitions for the WPCA), or the rules promulgated by the West Virginia Department of Labor to assist in effectuating the WPCA's provisions, *see* W. Va. Code R. § 42-5-3. *See generally Lehman*, 719 S.E.2d at 373 (noting that the West Virginia

20

Code of State Rules includes "the legislative rules promulgated by the West Virginia Division of Labor to further the purposes of the [WPCA]"). Additionally, the Court has not located any case law addressing the term "labor dispute" for purposes of Section 21-5-4(d)—which is not surprising, as a plaintiff would likely only invoke this particular provision if they were suspended, yet still retained their employment. *See* W. Va. Code § 21-5-4(d); *cf. id.* § 21-5-4(b) (addressing the required time periods for employers to pay employees who "quit[]," "resign[ed]," or were "discharge[d]"); *id.* § 21-5-4(d) (providing the applicable time periods for employers to pay employees who are "laid off," as well as the suspension provision at issue in this case).

In the absence of authority elaborating on the meaning of the term "labor dispute" for purposes of Section 21-5-4(d), the Court looks to the ordinary meaning of this term. *See, e.g.*, *Meadows*, 530 S.E.2d at 687–88 (analyzing the statutory language of the WPCA and stating that "[g]enerally the words of a statute are to be given their ordinary and familiar significance and meaning, and regard is to be had for their general and proper use" (alteration in original) (quoting *West Virginia v. Gen. Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 107 S.E.2d 353, 354 (W. Va. 1959))); *see also King Coal Chevrolet Co. v. Gen. Motors LLC*, 758 S.E.2d 265, 272 (W. Va. 2014) ("Courts should favor the plain and obvious meaning of a statute as opposed to a narrow or strained construction." (citing *Thompson v. Chesapeake & O. Ry. Co.*, 76 F. Supp. 304, 307–08 (S.D. W. Va. 1948))). In particular, Black's Law Dictionary defines the term "labor dispute" as "[a] controversy between an employer and its employees concerning the terms or conditions of employment, or concerning the association or representation of those who negotiate or seek to negotiate the terms or conditions of employment." *Labor Dispute*, Black's Law Dictionary (10th ed. 2014); *cf.* 29 U.S.C. § 402(g) (providing that, for purposes of the federal

Labor-Management Reporting and Disclosure Act, the term "labor dispute" is defined, in pertinent part, as "includ[ing] any controversy concerning terms, tenure, or conditions of employment").

Turning to Plaintiff's allegations here, Plaintiff avers in the Complaint that—on or about October 22, 2014—she requested her timesheets from Whitaker and informed Whitaker that Plaintiff's purpose in obtaining the timesheets was to "test[] whether Plaintiff's actual working time was being illegally reduced without her knowledge or consent." (ECF No. 1 ¶ 10.) Roughly two weeks later, Plaintiff requested personal leave for three days and Whitaker only granted this request as to one day. (*Id.* ¶ 12.) Plaintiff nonetheless "took sick leave" on the other two days. (*Id.* ¶ 14.) Plaintiff then asserts in the Complaint that Defendant suspended Plaintiff for two days due to "an alleged violation of Defendant's Employee Attendance Policy." (*Id.* ¶ 15; *cf.* ECF No. 14 at 9 (providing Defendant's argument that "Plaintiff was not suspended as a result of a labor dispute; she was suspended as a result of her violation of Defendant's Employee Attendance Policy due to her use of sick leave after her request for personal leave was denied").)

The Court finds that these allegations are sufficient, for present purposes, to survive a motion to dismiss. Plaintiff's dispute with Defendant as to her wages and timesheets and the stated reason for her suspension—a violation of Defendant's Employee Attendance Policy—both relate to the terms and conditions of Plaintiff's employment with Defendant. (*See* ECF No. 1 ¶¶ 10 & 15.) Furthermore, Plaintiff's allegations indicate that there was a temporal connection between her voicing concerns to Whitaker regarding Plaintiff's timesheets, Whitaker's refusal to grant personal leave, Plaintiff nonetheless taking sick leave on those days, and Plaintiff's suspension. (*See id.* ¶¶ 10–15.) Construing these facts in the light most favorable to Plaintiff, *see, e.g.*, *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014), and liberally construing

the phrase "as a result of a labor dispute," as used in Section 21-5-4(d), *see, e.g.*, *Meadows*, 530 S.E.2d at 688, the Court finds that Plaintiff's allegations are sufficient to survive the present motion to dismiss as to her state-law WPCA claim.[11]

Accordingly, the Court **DENIES** Defendant's Motion insofar as Defendant requests the dismissal of Plaintiff's claim under West Virginia Code § 21-5-4(d).

## *V. Conclusion*

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion.[12] (ECF No. 13.) The Court **DISMISSES** Plaintiff's request for injunctive relief in the Complaint. (*See* ECF No. 1 at 10.)

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:          March 28, 2016

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

---

[11]  The Court notes that—given the absence of authority as to the meaning of the term "labor dispute," as used in West Virginia Code § 21-5-4(d)—it may be willing at a later stage of this litigation to entertain a request to certify a question to the Supreme Court of Appeals of West Virginia requesting guidance on the meaning of the term "labor dispute," as used in West Virginia Code § 21-5-4(d).

[12]  On May 11, 2015, Defendant filed a Motion for Leave to Seal Exhibit B to Motion to Dismiss (the "First Motion for Leave"), in which Defendant requests leave to file an exhibit to its initial Motion to Dismiss under seal. (ECF No. 7.) As noted above, the Court denies as moot Defendant's initial Motion to Dismiss. (ECF No. 5.) The Court therefore similarly **DENIES AS MOOT** Defendant's First Motion for Leave. (ECF No. 7.)

On August 3, 2015, Defendant filed a Motion for Leave to Seal Exhibit B to Amended Motion to Dismiss, (ECF No. 15), in which Defendant requests permission to file an exhibit to Defendant's Motion under seal. For good cause shown, the Court **GRANTS** this motion. (*Id.*)